IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

TYRONE KING, #243868,              )
                                   )
            Plaintiff,             )
                                   )
      v.                           )        CASE NO. 2:10-CV-715-TMH
                                   )             [WO]
                                   )
LOUIS BOYD, et al.,                )
                                   )
            Defendants.            )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.  INTRODUCTION

This 42 U.S.C. § 1983 action is pending before the court on a complaint filed by Tyrone King ["King"], a state inmate, challenging actions taken against him during his incarceration at the Easterling Correctional Facility ["Easterling"].  In this complaint, King alleges that correctional officials violated his constitutional rights with respect to his classification as a restricted offender, attacks the conditions of confinement at Easterling, and challenges the assessment of a $1.00 processing fee for money orders sent to him. *Complaint - Doc. No. 1* at 2-3.  King names Louis Boyd, the warden of Easterling; Sherry Seals, the classification supervisor at this facility; Larry Anglin, his assigned classification specialist; and Kenneth Sconyers, an assistant warden; as defendants in this cause of action. King seeks monetary damages, injunctive relief, issuance of an order requiring the defendants to remove him from restricted offender status, and a transfer from Easterling.

*Id*. at 4.

The defendants filed a special report, supplemental special reports and supporting evidentiary materials addressing King's claims for relief.  Pursuant to the orders entered in this case, the court deems it appropriate to treat these reports as a motion for summary judgment.  *Order of November 10, 2010 - Doc. No. 16* and *Order of December 21, 2012 - Doc. No. 24*.  Thus, this case is now pending on the defendants' motion for summary judgment.  Upon consideration of this motion, the evidentiary materials filed in support thereof and the plaintiff's responses, the court concludes that the defendants' motion for summary judgment is due to be granted.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[1]  The party moving for summary judgment "always bears the initial responsibility

_____

[1]Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions." Fed.R.Civ.P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word --

of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [- now dispute -] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-324.

The defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact.  Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may ... grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it.").  A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-

---

genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination." *Id*.  "'Shall' is also restored to express the direction to grant summary judgment."  *Id*.  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior versions of the rule remain equally applicable to the current rule.

finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal citation omitted). Consequently, to survive the defendants' properly supported motion for summary judgment, King is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e), *Federal Rules of Civil Procedure*. "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Id*. at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001);

*Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (A plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("[M]ere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."). Hence, when a plaintiff fails to set forth specific facts supported by evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate.).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of*

*the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment.").  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).  To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts....  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine dispute of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-324 (Summary judgment is appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine dispute as to a requisite material fact.); *Waddell*, 276 F.3d at 1279 (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

Although factual inferences must be viewed in a light most favorable to the

nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, King fails to demonstrate a genuine dispute of material fact in order to preclude summary judgment. *Matsushita*, *supra*.

## III.  DISCUSSION

### A.  Absolute Immunity

Official capacity lawsuits are "in all respects other than name, ... treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900,  908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d

1419, 1429 (11th Cir. 1997).

In light of the foregoing and the facts of this case, the defendants are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities.  *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994); *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989).

## B.  The Conspiracy Claim

King alleges that the defendants "participated in [a] conspiracy" in classifying him as a restricted offender.  *Complaint - Doc. No. 1* at 3.  In order to establish a § 1983 conspiracy claim, "a plaintiff must show among other things, that Defendants 'reached an understanding to violate [his] rights.'" *Rowe v. Fort Lauderdale,* 279 F.3d 1271, 1283 (11th Cir. 2002) (citation omitted) (brackets in original); *Strength v. Hubert*, 854 F.2d 421, 425 (11th Cir. 1988) (to properly state a claim for relief based on a conspiracy, a plaintiff must plead that the offending parties "reached an understanding" to deny the plaintiff his constitutional rights); *Harvey v. Harvey*, 949 F.2d 1127, 1133 (11th Cir. 1992) (merely "stringing together" acts, without showing parties "reached an understanding" to violate plaintiff's rights, is insufficient to demonstrate the existence of a conspiracy).  A plaintiff must therefore provide more than a label or a conclusion.  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555  (2007).  "[A] complaint must contain sufficient factual matter, accepted as

8

true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 556, 570)).  King cannot rely on subjective suspicions and unsupported speculation but must provide sufficient facts to show that the defendants entered into an agreement to violate his constitutional rights. *Twombly*, 550 U.S. at 556.  In addition to pleading facts which show that an agreement was reached to deny King his rights, King must show an "underlying actual denial of [his] constitutional rights." *Hadley v. Gutierrez,* 526 F.3d 1324, 1332 (11th Cir. 2008).

Here, King's claim of a conspiracy by the defendants amounts to nothing more than a purely conclusory allegation which fails to assert those material facts necessary to establish a conspiracy among the defendants. *Fullman v. Graddick,* 739 F.2d 553, 556-57 (11th Cir. 1984) (holding that a conspiracy claim justifiably may be dismissed because of the conclusory, vague and general nature of the allegation).  Other than this allegation, King presents nothing to establish an actual conspiracy, nor is there other evidence of record which would indicate that the defendants entered into a conspiracy to deprive King of his constitutional rights. In light of the foregoing, the court concludes that the defendants are entitled to summary judgment on this claim.  *Iqbal*, 556 U.S. 678-79; *Harvey*, 949 F.2d at 1133; *Fullman*, 739 F.2d at 556-557

### C.  Custody Classification

King contends that his "clear [prison] record" and completion of various rehabilitative programs entitle him to recommendation for and/or placement in a more favorable custody classification.  *Complaint - Doc. No. 1* at 3.  This claim provides no basis for relief, as an inmate confined in the Alabama prison system has no constitutionally protected interest in the procedure affecting his classification level because the resulting restraint, without more, does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Francis v. Fox*, 838 F.2d 1147 (11th Cir. 1988); *Jones v. Diamond,* 594 F.2d 997 (5th Cir. 1979).

### D.  The Equal Protection Claim

King is currently incarcerated on convictions for manslaughter and first degree assault imposed upon him by the Circuit Court of Perry County, Alabama, in November of 2005.  The circumstances underlying King's convictions establish that when an argument between two individuals occurred near the doorway of his apartment "King retrieved a gun from his kitchen and fired one shot at the doorway. [The individuals engaged in the argument] ran. King ran behind [them] continuing to fire his weapon. [One of the individuals] fell to his knees then face down near the roadway approximately 150 feet from the doorway of King's apartment.  [This victim] died at the scene.  [The other victim] was

shot three times [and] flagged down [a passerby] to take him to [a local hospital]."
*Defendants' Exhibit 2 - Doc. No. 20-2* at 3.

King maintains that the defendants deprived him of equal protection because they refused to recommend that he be removed and/or failed to ensure his removal from restricted offender status while doing so for other inmates with similar  convictions. *Complaint - Doc. No. 1* at 3.  In a response to the defendants' reports, King identifies Edgar B. Riggins, Dwight Sweeney and Anthony Hicks as other inmates with similar convictions who received favorable treatment from the defendants regarding restricted offender status, while King's status as a restricted offender was not changed. *Response - Doc. No. 24* at 2.

The defendants deny that they acted in violation of King's equal protection rights. Specifically, they maintain that the Central Restriction Review Committee ["CRRC"],[2] in accordance with applicable classification criteria and due to the circumstances surrounding King's convictions for manslaughter and first degree assault, determined that King should remain classified as a restricted offender.[3]  *Defendants' Exhibit A (Affidavit of Stephanie Atchison - Assistant Director of Classification) - Doc. No. 16-1* at 1-2. The revised

---

[2]The defendants are not members of the Central Restriction Review Committee.

[3]The relevant classification criteria directs that "[o]n a case-by-case basis" the CRRC may assign restricted offender status to inmates "with offenses which may or may not involve death but are of such a violent nature that restriction [is] warranted...." *Defendants' Exhibit 1 to Exhibit A (Applicable Classification Criteria) - Doc. No. 16-1* at 3.

classification criteria, which became effective on October 15, 2009, permits restricted offender status for those inmates with offenses of such a violent nature that the CRRC deems restricted status is warranted. *Defendants' Exhibit 1 to Exhibit A (Applicable Classification Criteria) - Doc. No. 16-1* at 3. According to defendants,"[i]n January 2010, Inmate King's classification specialist submitted a CRRC Review Worksheet for review by the committee. On 2-10-2010, the [CRRC] reviewed the details of Inmate King's conviction[s] and determined that Inmate King's restriction would remain under [the violent nature] item ... of the revised criteria... . Based on the details of the inmate's convictions for manslaughter and assault in which King shot at one of the victims in his (King's) doorway, then chased both of the victims while shooting at them, killing one and hitting the second victim [with gunshots] three times, the CRRC determined that Inmate King should [remain a restricted offender]." *Defendants' Exhibit A (Affidavit of Stephanie Atchison - Assistant Director of Classification) - Doc. No. 16-1* at 1-2 (citations to exhibits omitted).

"Despite the tendency of all rights 'to declare themselves absolute to their logical extreme,' there are obviously limits beyond which the equal protection analysis may not be pressed.... The Fourteenth Amendment 'does not require absolute equality or precisely equal advantages,'... nor does it require the State to 'equalize [prison] conditions.'" *Ross v. Moffitt*, 417 U.S. 600, 611-612 (1974); *Hammond v. Auburn University*, 669 F.Supp.

1555, 1563 (M.D. Ala. 1987) ("The Equal Protection Clause of the Fourteenth Amendment does not require all persons to be treated either identically or equally.").  To establish a claim cognizable under the Equal Protection Clause, "a prisoner must [at a minimum] demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis. *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001); *Damiano v. Florida Parole and Prob. Comm'n*, 785 F.2d 929, 932-33 (11th Cir. 1986)." *Sweet v. Secretary, Department of Corrections*, 467 F.3d 1311, 1318-1319 (11th Cir. 2006).  "[O]fficial action will not be held unconstitutional solely because it results in a ... disproportionate impact....  Proof of ... discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 264-265 (1977).  "'Discriminatory purpose' ... implies more than intent as volition or intent as awareness of consequences.  It implies that the decision maker ... selected ... a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979) (footnote and citation omitted); *see also Hernandez v. New York*, 500 U.S. 352, 359 (1991).  Evidence which merely indicates disparity of treatment or even arbitrary administration of state powers, rather than instances of purposeful or invidious

discrimination, is insufficient to show discriminatory intent.  *McKleskey v. Kemp,* 481 U.S. 279, 292, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987).

Since this case is before the court on a properly supported motion for summary judgment submitted by the defendants, King bears the burden of producing evidence which would be admissible at trial sufficient to show:  (i) the defendants provided more favorable treatment to other similarly situated inmates – i.e., inmates who chased their victims while continuing to shoot at them repreatedly, resulting in the death of one individual and the serious injury of another;  *and* (ii) the decision to deny him favorable treatment resulted from intentional discrimination.  *Celotex*, 477 U.S. at 322-324; *Anderson*, 477 U.S. at 249 (To preclude summary judgment, plaintiff must present significant probative evidence showing that defendants provided more favorable treatment to similarly situated persons and did so as the result of intentional discrimination.); *E & T Realty Company v. Strickland*, 830 F.2d 1107, 1114 (11th Cir. 1987), *cert. denied*, 485 U.S. 961 (1988) (Intentional discrimination on the part of the defendants in providing the challenged disparate treatment is required.  "Mere error or mistake in judgment" or "[e]ven arbitrary administration of a statute, without purposeful discrimination, does not violate the equal protection clause.").  The plaintiff cannot rest on conclusory allegations of a constitutional violation to defeat summary judgment, nor is "[t]he mere existence of a scintilla of evidence in support of [his] position" sufficient to avoid summary judgment.  *Anderson*,

14

477 U.S. at 252; *Waddell*, 276 F.3d at 1279 (conclusory allegations based solely on subjective beliefs are insufficient to oppose summary judgment).

King makes conclusory allegations regarding a denial of equal protection.  The only probative evidence before the court demonstrates that the actions undertaken in King's classification process were based solely on the details underlying his convictions for manslaughter and assault.  As previously recognized, *infra* at p. 10, an Alabama inmate has no constitutional right to a particular custody classification.  Absent the existence of a constitutionally protected liberty interest, this court must "look to see if persons similarly situated to the plaintiff" – persons with similar violent details regarding their convictions – "have been treated differently" based on a constitutionally impermissible reason. *Hammond*, 669 F.Supp. at 1563; *Sweet*, 467 F.3d at 1318-1319.  Although King alleges that "other inmates [with] the same offense as Plaintiff" have been recommended for/removed from restricted offender status, he does not identify the convictions of these inmates. *Complaint - Doc. No. 1* at 3.  Nevertheless, even assuming that these inmates have been convicted of similar offenses, King does not specify the facts underlying the convictions of these other inmates so as to demonstrate they were actually similarly situated to him.  Thus, King fails to identify any other inmate with similar offense details toward whom the defendants acted in a more favorable manner, and his "equal protection claim necessarily fails because he has not shown that he was treated differently from other,

similarly situated prisoners." *Sweet*, 467 F.3d at 1319; *Hammond*, 669 F.Supp. at 1563 (emphasis in original) ("To the extent that any equal protection analysis is required [on the plaintiff's assertion of discrimination], absent the plaintiff's establishing a clearly protected liberty or property interest by the Constitution ..., this Court [must] look to see if persons similarly situated to the plaintiff have been treated differently.... [T]here is ***no*** evidence that any [individuals] in the same position as the plaintiff have been treated differently from the plaintiff....  The plaintiff has offered the Court nothing on which to base his equal protection claim.  Accordingly, it is the opinion of this Court that the plaintiff's equal protection claim is without merit.").

Even had King identified similarly situated inmates who received more favorable treatment, he does not allege that the defendants subjected him to adverse treatment based on some constitutionally impermissible reason; instead, King simply makes the conclusory assertion that differential treatment of serious offenders resulted in an equal protection violation.  Specifically, as the sole basis for his equal protection claim, King relies exclusively on the fact that he remains a restricted offender while other inmates with serious offenses have been recommended for and removed from this classification status. The mere differential treatment referenced by King does not implicate a violation of the Equal Protection Clause.  *Sweet*, 467 F.3d at 1319;  *E & T Realty*, 830 F.2d at 1114-1115; *McKleskey*, 481 U.S. at 292 (evidence which indicates only disparity of treatment or

arbitrary action is not sufficient to show discriminatory intent); *Horner v. Kentucky High School Athletic Association*, 43 F.3d 265, 276 (6th Cir. 1994). It is undisputed that correctional officials based King's classification as a restricted offender on the facts related to his convictions for manslaughter and assault – i.e., that King chased the victims from the doorway of his apartment, continuing to fire his weapon as the victims ran from him, and killing one individual and causing the other individual to suffer multiple gunshot wounds. The record is therefore devoid of evidence that the defendants or any other correctional official acted due to purposeful discrimination.

For the foregoing reasons, the allegations made by King are insufficient under federal law to establish an equal protection violation, and summary judgement is due to be granted in favor of the defendants on this claim.

### E.  Conditions Claims

King complains that while confined at Easterling he "fear[s] for his safety," and he has endured "cruel and unusual punishment [because of] overcrowding; [and] excessive noise." *Complaint - Doc. No. 1* at 3.

The defendants deny that the conditions about which King complains violated his constitutional rights.  Defendant Boyd addresses King's conditions claims as follows: "I deny Inmate King is suffering cruel and unusual punishment because of [his classification and confinement at Easterling].  Inmate King has never complained of an enemy therefore

he has no reason to fear for his safety.  Every institution in the State of Alabama is over capacity, thereby causing overcrowding throughout the system.  Dormitories usually house more than 100 inmates and will be noisy.... " *Defendants' Exhibit B (Affidavit of Louis Boyd) - Court Doc. No. 16-2* at 1.

Only those conditions which deny inmates "the minimal civilized measure of life's necessities" are grave enough to violate the Eighth Amendment.  *Rhodes v. Chapman*, 452 U.S. 337, 347 (19891).[4]  "'[T]he Constitution does not mandate comfortable prisons.' *Id.* at 349, 101 S.Ct. at 2400.  If prison conditions are merely 'restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society.' *Id.* at 347, 101 S.Ct. at 2399.  Generally speaking, prison conditions rise to the level of an Eighth Amendment violation only when they 'involve the wanton and unnecessary infliction of pain.' *Id.*"  *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004).

A prison official may be held liable under the Eighth Amendment for acting with "'deliberate indifference'" to an inmate's health or safety when the official knows that the inmate faces "a substantial risk of serious harm" and disregards that risk by failing to take reasonable measures to abate it.  *Farmer v. Brennan*, 511 U.S. 825, 828, 114 S.Ct. 1970, 1974 (1994).  A constitutional violation occurs only when a plaintiff establishes the

---

[4]The Eighth Amendment applies to the states through the Fourteenth Amendment.  *Rhodes,* 452 U.S. at 344-345.

existence of "a substantial risk of serious harm, of which the official is subjectively aware, ... and [that] the official does not respond[] reasonably to the risk'...." *Marsh v. Butler County*, 268 F.3d 1014, 1028 (11th Cir. 2001)(en banc), *quoting Farmer*, 511 U.S. at 844, 114 S.Ct. at 1982-1983.  Thus, in order to survive summary judgment on his claims challenging the conditions of confinement at Easterling, King is "required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995); *Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003) ("To be deliberately indifferent, Defendants must have been 'subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'" *Farmer*, 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991)....  Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists-and the prison official must also 'draw that inference.' *Farmer,* 511 U.S. at 837, 114 S.Ct. at 1979.").

The living conditions within a correctional facility will constitute cruel and unusual punishment when the conditions involve or result in "wanton and unnecessary infliction of pain, [or] ... [are] grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes*, 452 U.S. at 347.  "Conditions ... alone or in combination, may

deprive inmates of the minimal civilized measure of life's necessities.  Such conditions could be cruel and unusual under the contemporary standard of decency .... But conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional." *Id*. at 347.  To determine whether conditions of confinement constitute cruel and unusual punishment, the court must look to the effect the condition has upon the inmate. *Id*. at 366.  In a case involving conditions of confinement generally, or several different conditions, the court should consider whether the claims together amount to conditions which fall below constitutional standards. *Hamm v. De Kalb County*, 774 F.2d 1567 (11th Cir. 1985), *cert. denied Hamm v. De Kalb County*, 475 U.S. 1096, 106 S.Ct. 1492, 89 L. Ed. 2d 894 (1986); *see also Chandler v. Baird*, 926 F.2d 1057 (11th Cir. 1991).

Despite his allegations regarding the conditions of confinement at Easterling, King does not establish that these conditions denied him the minimal civilized measure of life's necessities or subjected him to a wanton and unnecessary infliction of pain. *Wilson*, 501 U.S. at 298-299; *Rhodes*, 452 U.S. at 347. Furthermore, King fails to demonstrate deliberate indifference or reckless disregard by the named defendants with respect to his health or safety.  Specifically, King does not identify any particular incident or condition of which defendants Boyd, Seals, Anglin and Sconyers were aware from which an inference could be drawn that a substantial risk of serious harm existed.  The record is also devoid of any evidence showing that the defendants drew such an inference.  Consequently,

20

summary judgment is due to be granted in favor of the defendants on the plaintiff's conditions claims. *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999); *see also Carter*, 352 F.3d at 1349-1350.

### F.  The Processing Fee

King challenges the Alabama Department of Corrections' imposition of a $1.00 processing fee for money orders sent to inmates. He contends that imposition of the processing fee violates his constitutional rights.[5]

The ADOC provides the following information regarding the collection of processing fees for money orders and cashier checks sent to inmates:

> **Effective September 1, 2010** the Alabama Department of Corrections began collecting a $1.00 processing fee for each money order and cashier check received through the U.S. Postal Service or other similar conveyance that is processed and deposited into an inmate's PMOD account by the ADOC. The Department elected to collect the $1.00 processing fee to partially offset the costs associated with the substantial staff time required to manually open, sort, and physically deposit money orders and cashier checks into the bank.

*Available at* http://www.doc.state.al.us; *see also Defendants' Exhibit 2 to Exhibit E (Policy Statement on Money Order and Cashier Check Processing Fee) - Doc. No. 16-5* at 3-4. Collection of the processing fee "allow[s] the ADOC to continue accepting money orders and cashier's checks [for placement in an inmate's prison account] while providing family

---

[5] While King argues that the processing fee violates his Eighth Amendment rights, it is clear that this claim is more appropriately analyzed under the Due Process Clause of the Fourteenth Amendment, which provides that no state "shall deprive any person of life, liberty, or property without due process of law."

and friends with an alternative to the higher costs associated with sending funds electronically." *Id*. at 4.

Although King complains about being assessed a processing fee for money orders that he receives, the court finds that the prison system has a reasonable interest in defraying the costs of incarceration for purely discretionary services, the provision of which may include charging inmates for costs associated with expenses incurred by correctional officials in allowing inmates to maintain funds in a prison account.[6] Put another way, the plaintiff has no constitutionally protected right not to pay the costs and/or fees associated with his desire to have access to various prison privileges, including the availability of an inmate money account. *See Wolff v. McDonnell,* 418 U.S. 539, 556 (1974) ("[T]he fact that prisoners retain rights under the Due Process Clause in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have been lawfully committed."); *Givens*, 381 F.3d at 1065 (concluding that Alabama has not created a property interest for inmates in the interest that accrues on their PMOD accounts and correctional officials may utilize interest earned on the inmate accounts to defray the considerable costs associated with maintaining the accounts); *Jensen v. Kleckler*, 648 F.2d 1179, 1183 (8th Cir. 1981) (holding that there was no basis for a due process claim where

---

[6]Inmate PMOD accounts are maintained by the Alabama Department of Corrections as a convenience for inmates at a considerable cost to the Department.  *Givens v. Alabama Department of Corrections*, 381 F.3d 1064, 1065 (11th Cir. 2004).

deduction from prisoner accounts for postage were "assessment[s] for value received" and plaintiffs did not contend that they did not receive the services for which they were charged); *Slade v. Hampton Road Regional Jail,* 407 F.3d 243, 251-53 (4th Cir. 2005) (holding that the imposition of an $1.00 per day room and board charge does not amount to a "punishment or fine" nor does the automatic deduction of this fee from an inmate's trust fund account constitute an unconstitutional interference with a property interest). Accordingly, the court concludes that the assessment of a nominal fee on money orders sent to inmates for the purpose of defraying some of the costs associated with processing such transactions, without more, fails to state a violation of an inmate's federally protected constitutional rights.[7]  *See Sandin v. Connor*, 515 U.S. 472 (1995).

### G.  Transfer from Easterling

King asserts that he is entitled to a transfer from Easterling.  This claim provides no basis for relief, as a convicted prisoner has no constitutionally protected right to confinement in a particular correctional facility.  *Meachum v. Fano*, 427 U.S. 215, 224 (1976) (no liberty interest arising from Due Process Clause in obtaining transfer to less

---

[7]The court is unaware of any basis under which an inmate should be afforded greater protection by the Constitution from the assessment of fees and costs associated with the voluntary consumption or utilization of what amounts to optional goods and services (not associated with the provision of basic human needs) than is afforded an ordinary free-world citizen.  Further, according to the policy statement regarding the $1.00 processing fee associated with money orders, this nominal fee provides the sender of the money order an alternative to the higher costs associated with sending funds electronically.  *Defendants' Exhibit 2 to Exhibit E (Policy Statement on Money Order and Cashier Check Processing Fee) - Doc. No. 16-5* at 4 (The electronic fund providers charge the sender a fee of anywhere "from $3.00 to $7.95 to send [an electronic transfer of] $50.00 to an inmate.  Funds received through this method are electronically deposited directly into the facility's PMOD bank account [with no processing of these funds undertaken by correctional officials] and a detailed list of transactions is provided to the facility."

secure prison because "[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose."); *see also Olim v. Wakinekona*, 461 U.S. 238, 245-246 (1983) (a prisoner has no constitutional right to be confined in a particular institution and may be subjected to an interstate transfer without implicating the Constitution).  Moreover, an inmate in the Alabama prison system has no constitutionally protected interest in confinement in the least restrictive prison environment for which he may be eligible because the resulting restraints are not so severe that they exceed the sentence imposed upon him.  *Sandin v. Conner*, 515 U.S. 472, 485 (1995).  Although the plaintiff's confinement at Easterling may entail "more burdensome conditions" than that of some other facility, this confinement is "'within the normal limits or range of custody which the conviction has authorized the State to impose.'  *[Meachum,* 427 U.S. at 225]; *see also Montanye v. Haymes,* 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976)."  *Sandin*, 515 U.S. at 478.  Consequently, defendants' failure to transfer King to a correctional facility which he deems more desirable does not rise to the level of a constitutional violation.  Summary judgment is therefore due to be granted in favor of the defendants with respect to this claim.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendants' motion for summary judgment be GRANTED.

2.  Judgment be GRANTED in favor of the defendants.

3.  This case be dismissed with prejudice.

4.  The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that on or before December 14, 2012, the parties may file objections to this Recommendation.  Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed

down prior to the close of business on September 30, 1981.

DONE, this 30th day of November, 2012.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE

26